The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Robin J. Steichman for his itinerary. Thank you, Mr. Payne. I'm glad you've seen it. Our next case this afternoon is 425-0505 in the State of Illinois versus Jessica Lighthart for the appellant. Please state your name. For the record, this is an appellate defender of trust in Palachuk on behalf of Ms. Lighthart. Thank you, Counsel. Is it pronounced Palachuk? Yes. Right. I always want to make sure I get that right. And for the appellee? Stephanie Lee for the people of the State of Illinois. Thank you. Before we begin, there was a motion pending to cite people we want in trial to response, Ms. Palachuk. I don't take it as an objection to any of that, but we will grant the motion and both of you may argue in the context that that motion has been granted. And with that, Ms. Palachuk, on behalf of the appellant, you may proceed. Thank you, Your Honor. Good afternoon, Your Honors.  Counsel. This case is about a woman who suffered extraordinary abuse and then was repeatedly failed by the attorneys who were meant to be helping her. Ms. Lighthart was first failed by her plea counsel, Ms. Pashuk, and later was failed by her post-conviction counsel, Mr. Becker. I do want to focus on my first and third arguments for my briefs, which both stem from the unreasonable assistance of post-conviction counsel. And to be clear at the outset, in terms of relief, we are asking for remand for further proceedings at the appropriate stage for both of those claims. Turning to my first issue, we did argue that post-conviction counsel rendered unreasonable assistance by failing to adequately shape Ms. Lighthart's claim that her plea counsel was ineffective for failing to file the proper post-plea motion, specifically a motion to withdraw her guilty plea. And post-conviction counsel was unreasonable specifically for failing to argue that Lighthart was prejudiced by that failure to file the motion. As this court knows... What would have been the basis for her to withdraw the plea? Your Honor, she does have a valid defense to all of the charges that she faces, and counsel, as I argued in my briefs... But that in and of itself is not a basis to withdraw a plea, right? I mean, there's lots of reasons that somebody who has a facially valid defense could choose to plead guilty. Sure, but a claim or valid defense is a recognized basis, one of the recognized bases for granting, rather, a motion to withdraw a plea. But she knew the valid defense. She knew of that valid defense before she decided to plead guilty. Yes. However, Your Honor, there is a valid... The misapprehension of justice... Excuse me, the misapprehension of fact or law is a state... Is a type of manifest injustice. There's also, under Nemeto Roman, a doubt of defendant's guilt. In this case, the ends of justice would be better served by holding a trial. I do understand she was aware of her defenses at her guilty plea stage. However, at that point, she was being advised to avoid a natural life sentence. Based on proceedings below, it does sound like her plea counsel did investigation. That's not a claim that we're challenging here today. But there's really no discussion in the record about the specific intent as to the first-degree intentional murder charge. And she does have a defense to that. So there's a big focus on a compulsion defense through the record at various stages. And both the circuit courts, her counsel, focus on the fact that compulsion is not a defense to intentional first-degree murder. But nowhere in the record is there any evidence that she had specific intent to murder the decedent in this case. Counsel, that's one of the things about pleading guilty. It's not as if you have to prove specific aspects of it. The state is when the defendant pleads guilty. And I suppose the question is, what about the advice of defense counsel to plead guilty and avoid this natural life possibility of a natural life sentence would be incorrect or unprofessional? Your Honor, I think the advice that Ms. Lightheart was given with regard to her guilty plea didn't fully cover the breadth of the defenses that she had. I understand what you're saying. She has the knowledge, so to speak, at the time that she pled guilty. But counsel fails to do a number of things. And I think the prejudice stems from that lack of breadth surrounding understanding what she's particularly giving up. There's multiple points throughout the record where Ms. Lightheart indicates she was really just going along with what her counsel told her to. And specifically, what's relevant for our claims is that post-conviction counsel didn't put forward any of these things. And that's why the claim was dismissed at the third stage. Did plea counsel testify at the third stage? I believe so, Your Honor. Pardon? I believe so. And was this pursued? Why did you advise the defendant to plead guilty to avoid the intentional first-degree murder charge? I'm sorry, Your Honor, the question is, did post-conviction counsel testify as to why? No, plea counsel. Yes. Did plea counsel testify as to why? About the conversations with the defendant on the plea agreement and why counsel thought this was an appropriate resolution. The possibility would be, as I recall, it was not guaranteed 35 years, but it would be no greater than that. Is that right? That is correct, yes. Was that pursued? I do believe that there was discussion of plea counsel and what her advice was. And the focus was on Ms. Lightheart avoiding a natural life sentence. I don't recall, though I would have to check the record myself, if there was a discussion of the specific intent element. Is there any reason to think that this advice was unprofessional or not warranted? In terms of the advice given at the plea agreement? By plea counsel to defendant. Your Honor, I think the lack of evidence in the record surrounding a specific intent or counseling about specific intent is that evidence. There's plenty of discussion of compulsion. But there's repeated emphasis on the fact that compulsion, of course, is not a defense to intentional murder. Of my recollection of the record, there's very little in the way of any conversation around specific intent. Is it also true that it would be a problematic defense on the felony murder charge because she had multiple opportunities to flee? I'm sorry, could you repeat the question? Compulsion would also be a problematic defense on the felony murder charge because of her multiple opportunities to flee or end the scheme or walk away. It wasn't a moment of compulsion. It was, I know, a situation of significant domestic abuse. But it doesn't typically work where there is an opportunity to step away. I think that Nicole DiMaggio's testimony rebutts that. So Nicole DiMaggio testifies in Mr. Buchanan's trial. The state itself, in I believe its closing argument at Buchanan's trial, discusses how Nicole DiMaggio had a valid compulsion defense. I think Jessica Lightheart is in the same position, if not more so, than Ms. DiMaggio, who testified that she had very little relationship with the co-defendant, with Mr. Buchanan. Whereas Lightheart, of course, has a storied history of abuse, as you say, Your Honor. So Nicole DiMaggio, the state recognizes, did not have a real opportunity to flee, was under sort of continued threat of violence from Mr. Buchanan. Lightheart is in the very same position. You are essentially challenging that the trial court be heard by not granting the defendant's motion to withdraw a guilty plea? No, Your Honor. We are arguing that post-conviction counsel was unreasonable for failing to present this prejudice argument. So we're asking not for a review of the manifest error of the circuit court. We're asking for a review of post-conviction counsel. And again, it's that post-conviction counsel's lack of arguing prejudice ultimately was this particular claim's demise. The ultimate remedy you're seeking is to have the guilty plea withdrawn? Ultimately. But at this stage, what we are asking for is remand for third-stage proceedings. Also, one of the problems is assessing the potential prejudice here is I've been involved in this for a long time as an appellate judge and a trial judge, and I've seen the participant in and seen must be now thousands of guilty pleas. I've never seen a guilty plea like this before. I've never seen one where the trial court is obligated to comply with Supreme Court Rule 402, and that's it. This judge talked about going above and beyond, went far above and beyond in the discussion about what's going on, and do you understand this, Ms. Lightheart, and all the rest of this. Have you ever seen a guilty plea as carefully done and as covering all possible concerns as this one? Your Honor, in my two and a half years of trial practice, when I've led more than I'd like to say number of defendants to guilty pleas, I did not recognize this as above and beyond. I would say that many of these questions were standard. And that's not to say incorrect, but standard. And it remains that we have evidence that Ms. Lightheart was unaware about this specific intent defense. The focus for everyone was on compulsion. That counsel, plea counsel specifically, was certainly seemingly from the record testified that she never made any guarantees about sentencing, testified that she didn't force Ms. Lightheart to plead guilty. But it remains that the advice, at least on the record, is missing evidence of a discussion of specific intent. You mentioned DiMaggio's testimony. That was at Buchanan's trial? Correct. And did that occur after defendant plea? Yes, very briefly. We really can't deem her plea counsel for not anticipating what would happen in a future trial. Well, Your Honor, Mr. Buchanan's bench trial was August 3rd, 2004. Ms. Lightheart pled guilty on June 15th. I don't think it was a surprise to anyone that Mr. Buchanan was also going to trial at the same time, and that Nicole DiMaggio would be testifying given that she was given. No, but you were looking at what was said at Buchanan's trial about DiMaggio having a valid compulsion defense.  That's something in the future. We have to evaluate plea counsel based on what is known at the time of the plea. Is that fair? I think that's fair, Your Honor, but I suppose my point is plea counsel would have been aware of Nicole DiMaggio's position. She should have been aware that Nicole DiMaggio was being offered a sweetheart deal of sorts by the prosecution. She pled guilty to probation in exchange for her testimony. When? I do not have that off the top of my head. But we would want to know whether that was before or after the plea, right? I can look into that. Counsel, in this case, the trial court conducted a third stage hearing on the post-conviction petition. I'm sorry, if you could repeat, Your Honor. The trial court conducted a third stage hearing on the post-conviction petition. That's it. And are you arguing to us that the court erred in dismissing the second state at the second stage by moving on to the third stage? I want to make sure I have your question right. The trial court erred in dismissing the second state at the second stage claim that plea counsel was ineffective for failing to present additional evidence in mitigation of the hearing. I'm sorry, what's the last part? In mitigation of the hearing. In other words... Yes, so are you pointing to our third issue? Yes, we're raising the claim about... Yes, about sentencing... The second stage hearing. Yes. Well, the reason I'm raising that is because of the discussion in People v. Watts, where less than a month ago, this court wrote that once a claim is advanced to the third stage of post-conviction proceedings, challenges to the manner in which the claim was pleaded at the second stage under Rule 651C are no longer relevant. So... Is that a correct statement of the law? I want to be clear, Your Honor. We're talking about the second stage claim about sentencing evidence that was dismissed. That was dismissed at the second stage. So we are arguing for that claim regarding additional support, that that's a second stage claim. That claim did not make it to the third stage and was never argued by counsel at the evidentiary hearing. Well, was there anything barring counsel at the third stage from arguing whatever counsel wished to argue? I think with regard to a claim that's been dismissed, counsel cannot choose to defy the circuit court's dismissal. Well, it wasn't dismissed. It was just not found to be a grounds to grant the state's motion to dismiss. Isn't that correct? The... So as far as... Well, let me be brief. Post-conviction hearing act has three stages. The first stage is the defendant files a petition. The court decides whether to appoint counsel or not, and so counsel is appointed. Then there's a second stage at which the state might file motions to dismiss. There's no requirement that the state do any of that, is there? No. So the state could simply answer, which I've advised lots of prosecutors to do, and say, don't file a motion to dismiss, just say, let's go to third stage and prove it. So if you go to third stage, under those circumstances, what role does Rule 651C have at a third stage? I understand that this court has decided in Watts that Rule 651C does not apply at the third stage. Were we wrong? Your Honor, I believe that the Illinois Supreme Court has... Well, they haven't come out and said it. They have applied Rule 651C, specifically in People v. Owens, to third stage proceedings. You're not answering my question. Were we wrong in Watts to say that a month ago? Your Honor, I think... You can tell us if you think we were wrong. It's okay, counsel. Our position is that, yes, 651C does apply based on Illinois Supreme Court case law as it stands. However, we don't even need to reach that claim. We do in our briefs for the first issue, which did proceed to the third stage, make a prejudice argument. So this court need not... Your Honor, if we're following Watts, when we're talking about reviewing what the court did at third stage here, Watts would say, well, we don't need to talk about and shouldn't talk about 651C at all. Isn't that correct? The answer was Rule 651C is not determinative. I would agree that 651C... No, you said not relevant. Your Honor, I think... The phrase wasn't determinative. It has nothing to do with third stage proceedings, is what we wrote. Just for clarification, counsel, the allegation that there should have been additional evidence of sentencing, that was dismissed by the trial court at the second stage. Correct. That foreclosed it from being heard at the third stage. Correct. And that's why you're focusing on the 651 issue for a claim that was dismissed at the second stage. That's correct, Your Honor. As far as the first issue, which did go to an evidentiary hearing, I think that's where this question comes into play. I understand that Watts indicates 651C does not apply. I think... I believe it's Williams that indicates 651C. That's an Illinois Supreme Court case. 651C works together with the general unreasonableness standard in the section of the act that pertains to guide courts in analyzing whether or not counsel is unreasonable. So I believe that the discussion of 651C still informs an analysis of whether or not counsel is unreasonable under the general reasonableness standard at the third stage. We make, sort of, analyze to Strickland, which I believe this court acknowledges is a guiding principle, though not, of course, controlling. 651C can act as sort of a first-prong analysis, and the prejudice standard is that second prong. In this case, as it pertains to the first issue around the evidentiary hearing, counsel did not argue that prejudice prong. And we discuss how Ms. Lightheart, excuse me, was prejudiced by that on page, I believe, beginning at 33 of our brief. Your Honor, I do see that my mic is on. Why don't you finish what you were just saying, counsel. Go ahead. You were, in the middle, saying something. I want you to be able to finish. Thank you, Your Honor. Just that our position is we've argued both of the necessary prongs for the general reasonableness standard for this court to consider as far as this first issue. And I will sum up to say for all the reasons I've stated here, as well as all the reasons in our briefs and our response to the state's motion, we'd ask that you reverse the denial of Ms. Lightheart's petition and remand the case for further proceedings. Thank you. Thank you, counsel. Ms. Lee, on behalf of the state, you may make your argument at this time. Good afternoon, Your Honors. Afternoon. Counsel. May it please the court. What this case is actually about is Jessica Lightheart not taking, having any willingness to take responsibility for her own conduct and choices. This defendant had a nine-month on-and-off relationship with Marcus Buchanan. She came out of jail when she met him. She was already there. She was already in front of the drug court, not complying with the probation there. There was a petition to revoke. By the time they arrested her after fleeing with Marcus Buchanan after... Which issues is this relevant to? It's relevant to all of this. It's relevant to when... Well, it's very relevant to some of it. It's very relevant to the specifics. What it's relevant to is when I said that the court, during sentencing, Judge Collins not only went above and beyond in the plea, she also went above and beyond in the sentencing to explain exactly what her understanding of this particular relationship was. In the context of it, she said, Yes, I don't fully understand this relationship or the relationship you had with the victim, who she was also seeing in between and on and off. As to whether we... We're calling this sort of a valid defense. It is not a valid defense. It is not a defense to any of the intentional murder counts, which she was in fact charged with. As to the felony murder, on occasion, it can be.  The problem here, and this is what I mean by the choices, defendant set up this robbery. She knew that this victim, Michael... I'm sorry, that Christopher Houston carried around money, and she went around, I think, helping him bring some drugs to some customers and brought him over where she knew that Marcus Buchanan was in wait for him. She actually had him carry something heavy so that he would have his hands not free. So this is a compulsion. And the reason, again, why it's relevant is that if you read the judge's sentencing at 589 to 99 in the record, she was explaining, you were alone in that car when you brought him over here. You chose to bring him in carrying something to confront your other boyfriend on and off again person. And so this isn't something that she just happened upon. And that is very important when you consider this Nicole DiMaggio. Because Nicole DiMaggio, it was her house. She had no idea these people were coming and invading her house to do this. So she got caught up in the middle of this. And then, yes, she absolutely, she helped burn the car. She did all of those things. She got burned herself, actually, when the car exploded. But that's, again, what the judge said during sentencing. You know, Jessica, they were driving after the death, but they were driving his car over to burn it afterwards. She's in the car then. The other thing is, so she gets to sentencing. All this stuff she wants to say about her relationship. She was asked if she wanted to testify. She voluntarily gave up that right. She waived it. She explained that on the record. And that's at 576 and 77. Then she was specifically told by the court, you can say anything you want. You can talk for as long as you want. And what did she say? She said, I regret that my fear kept me from acting responsibly. Is that how you would describe this offense? Not acting responsibly? They set this man up. They killed him. To the extent, even in the brief now, the defendant is saying, oh, there's some doubt of my guilt, or I'm not the one that injected the drain on which there is testimony. We're not assessing the merits of it. We're trying to understand whether counsel adequately represented her in connection with it. We do have to assess the merits in this sense. Part of her brief is, or her argument is, I wasn't really facing natural life. Well, the drain does matter for that, because that's what made it brutal and heinous as well. The fact that he lay dying there and what she did was inject drain. I understand it wasn't the consequences. Everything that they did is brutal and heinous, and it does subject her. The fact that they set this robbery up, it does subject her to natural life or to the lack of a compulsion defense. But to say that somehow that wasn't investigated or looked into, this wasn't a rushed plea. She was arrested December 21st of 2002. She was in custody all the way until her plea, which was in August. Sorry, in June, and then her sentencing was in August. So this wasn't, oh, my gosh, you're going to help me, and I didn't know what to do. I had to plead. This was well thought out, and again, to the extent that she said, oh, I was under Marcus Buchanan's shadow for two and a half years. No, she would have been in custody well away from him. Counsel, I have a procedural question I want to ask you about. Justice Dowery raised a good point, and it's something I want to address. When the defendant filed a post-conviction petition in this case and was amended, the state filed a motion to dismiss the post-conviction petition. Correct. And the trial court conducted a hearing on it, and the petition alleged all kinds of different things, problems of plea counsel being effective for seven different reasons, I think, at least. Correct. The trial court conducted a hearing on it and dismissed certain claims while advancing others to a third stage hearer. Correct. What's that all about? What sense does that make, and why does the court do that? That is, if you're going to advance anything to a third stage hearing, what's the point of dismissing certain claims if that's in by the way, what's the procedure even to do that? If a petition fails at the second stage to state a sufficient basis to be advanced to the third stage and the state files a motion to that effect, then the trial court could grant it and the defendant could appeal that dismissal. What's the point of this when you're going to have a third stage trial court deny the motion to dismiss, at least in part, right? Because some of these claims are going to go on to the third stage, but apparently there's this notion that, well, but the court dismissed claims X, Y, and Z. Where did that come from, and what's the point of that, and how is that helpful or even appropriate? Well, I mean, I would welcome the court to rule, to opine on that and say that that's the only way that things could be done. I have seen other cases where that is, in fact, when you have so many claims. Because some of them don't make a substantial showing, then the court says, and I would say probably judicial resources, because otherwise your hearings, how long would this hearing have to go on if we are dealing with so many claims? Well, the third stage hearings are addressed to the trial court's discretion. Put on the evidence you got that's pertinent to this, and let's see where we go here. But if you had to put on evidence to claims that you know were clearly meritless, it would, you know, take a lot of the time. Absolutely, this court, if that's the decision, and I... As I mentioned to Ms. Belchick, it seems to me, the Illinois Supreme Court has told us that at the second stage, the trial court and this court, if there's an appeal, must assume the truthfulness and accuracy of petitions and affidavits in support of the petition. Very high standard to try to overcome. Whereas the third stage, we assume nothing. Trial court, as this court has written, hey, you're the trier of fat. If you don't believe some nonsense that you think is nonsense from the defense witness, say so. And the formal rules of evidence don't even apply. You can just give us your perspective. What's gained by this? I don't understand it. I don't... Yeah. I think reasonable minds, you know, could differ on that. Because you do take all well-pled allegations true at the second stage. What I think the judge is finding is these either are not well-pled or even taken as true. And here, part of the problem here is, again, you had a pro se one, then you had an adopting of that, then you had a supplemental, then you had a... Well, what if the trial court in this case had said what I'm suggesting? Because some of these... Because I'm not going to dismiss the petition, I'm going to deny at least the part, I'm going to send it all over to the third stage, call your witnesses, let's hear it all. Right. How would anyone have been harmed by that? What's the problem with that? Well, actually what I'm picturing right now is some of the self-help representatives or pro se defendants that we get who write thousands, thousands of pages. And what do you do? Because that's what we're getting is there's one claim here that maybe has a chance. And so here, I really thought that the judge... I mean, to me, the post-conviction judge's very clear second stage order is very well thought out. I understand that there is some ambiguity, and I'd welcome this court to say absolutely once it's... But then, as Ms. Pelchik says, shouldn't we review the trial judge's second stage ruling, even though it went to a third stage under 651C? Well, and I think that that is why, if you... And the way the state responded in the briefs as well, is the second stage rulings could possibly be looked at, at least from how I was understanding it. I would, again, certainly welcome being told otherwise. But if the second stage... So there was the one claim, and that's why I was referring to it as her primary claim, which was disputed in the reply brief. But the primary claim is, this wasn't a voluntary plea, because she did not fully investigate my defense. That was her primary claim, because that is the only way she's going to be able to withdraw her plea, if it wasn't voluntary. So she wants to say, no sufficient investigation. Then she wanted to say, okay, but these other claims... So I think, you know, if we stop looking at argument two and three under the 651C lens, which I'm more than happy to do, I could certainly explain why that was not unreasonable assistance of what was done. And I can't really tell if that's my time or something. No, your time is up. Oh, great. I didn't see you. Sorry. I'm just curious. Has the Supreme Court ever specifically addressed the things I've been musing about, talking about how, yeah, it's appropriate that the second stage trial court to grant, to determine that arguments A, B, and C are meritless and we're going to dismiss them, which is apparently the language used here, but arguments E, F, and G are going to be advanced to the third stage. Has the Supreme Court ever said, yeah, that's an appropriate thing to do? I recall some cases from, and I think they're more from first to second, saying the whole petition goes or not. Oh, of course. Yes. So I don't recall specifically. Obviously, these are very good questions, and in some ways to me it seems like it depends on the context, although I agree when you've got, if you've got a hearing, you've got everything. You've got the relief you wanted. You've got it to an evidentiary hearing. Yeah, I mean, as I say, there's no requirement that the state file a motion to dismiss. No, there's not. As I mentioned and lectured about in trial judges, I see hours and hours and hours spent by prosecutors on motions to dismiss at the second stage, and trial judges coming up with eight-page explanations about why they're going to grant it or not grant it or whatever, and to what end? I don't understand it. And, again, that's why I think that there's those, I would assume that the other side of that is the judicial economy, but the fact of the matter is I don't, at this point, for this case, if you look at two and three, they won't be able to prove unreasonable assistance. Counsel, I owe you an apology. I was musing about this subject, which really is not pertinent to the merits of this case. My apology is, to the extent you wish to address further the arguments made by Ms. Palchak, I want you to be able to do that, and I don't want to be interfering with the arguments you wanted to make. I think I said most of what I want to say. I want to add that one of your honors asked about whether the trial attorney had testified at the third stage hearing, and, in fact, there was testimony not only from her but from Attorney Green, and that attorney was brought in specifically because they were gearing up to go to trial. They were doing all the investigation. So to say that there was some sort of an unreasonable or lack of investigation is false. So I guess the claim is post-conviction counsel didn't do a good enough job questioning plea counsel and the other one as well at the third stage? It seems to be. I'm not exactly sure because I know that by the time we got to third stage, you absolutely can't prove and did not meet the burden that she would have had grounds to withdraw her plea. So to the extent that, I mean, you don't have to do anything. When we're talking about first-degree murder where it was exceptionally brutal, might face natural life, plea counsel was there and advised the defendant, this is a real concern. Was there any questioning of plea counsel at the third stage on this whole subject about clarifying why counsel thought it appropriate to advise the defendant? Much of what they talked about is that it was her choice. They talked about the options. They talked about that they were absolutely willing to go to trial. They were ready to go to trial if that's what she wanted to do, and she chose to plea. It was her voluntary choice. The spokesman, if I understood correctly, has raised the question about whether or not the claim that she could face a natural life sentence upon conviction was really sound judgment or soundly raised. In other words, could the state really prove this, and was this something which plea counsel correctly evaluated and advised the defendant about? What she was actually got was she was offered a cap of 35 years. So not only did she avoid the natural life, she also avoided the 60 years, plus any kind of add-on for the firearm. I know she didn't personally shoot it. She was certainly accountable. She was facing a lot more than 35 years. So what this did is it put it to the felony murder for the 20 to 35 years, and Judge Collins said to her, what are you doing here? She said, I'm pleading guilty. And then what's going to happen? We're going to have a sentencing hearing. And what's going to happen at that sentencing hearing? I'm going to get a sentence in between 20 and 35 years. Ms. Belchert suggested, maybe I misunderstood it, but I think she suggested that plea counsel's evaluation of the danger of a natural life sentence was flawed. It was not sound. Was this brought out at all at the third stage? I don't recall that specifically, but the point being it was said at the plea, this is part of why we're doing this. And the problem with that, again, is she really was facing, you certainly couldn't find as a matter of law that that was so deficient performance to recommend that she consider this after they've explored all these witnesses, they found an expert, they did talk about the expert, and they said that the expert was very ambivalent. Some things would help, some things would not. So to say that we didn't really have a good compulsion defense here is borne out by the record. So she did investigate, and you certainly couldn't say that was deficient performance as a matter of law to say that this was poor advice. One other question. Your time is about up, but you're an experienced litigator for SAP. Do you see many cases like this in which a trial court at a second stage PC proceeding has dismissed some claims in part and then advanced the rest to the third stage? I am seeing some, yes. This is not unusual. I'm not seeing that as unusual. We always end up in this, you know, the same thing that you're asking. And so at least, you know, on its face, I took wads to say, well, the claim. So certainly we know that as to the claim that went on, 651C is 100% irrelevant. I don't know of a Supreme Court case that has said you can't do this. Well, thank you. Your time is up. Thank you. I'm going to make your rebut argument at this time. Thank you. Your Honors, I want to address just two points if I may. Excuse me. I'm anxious for you to do it. But before I get there, I want to ask you the same question I just asked Ms. Lee, which is you're an experienced litigator for OSAP. Do you see in any cases in which, or any other cases in which, that the trial court in the second stage addresses a state's motion to dismiss and grants it in part purporting to say, well, I'm going to dismiss arguments one, two, and three, but I'm going to advance arguments four, five, and six in the third stage, as happened here. Do you see much of that?  I have, Your Honors. I have not been at OSAP for an incredibly long time, but in my time I have seen other cases where that is. So this isn't all that unusual? From my experience, no. Thank you. Now I'm anxious to hear your rebut argument. Thank you, Your Honor. Again, two things. First, Ms. Lee talks about Ms. Lightheart's compulsion defense, whether or not that is really available to her. I want to point out the language Ms. Lee quotes here about sentencing and the sentencing court pointing out you were alone in the car, you had these opportunities. Ms. Lightheart's affidavits document a serious history, not just of abuse, but a history of stalking, a history of staking out her and her family members' homes, history of threats to her family members, including her son, including her parents. He shows up unannounced. We have testimony of sentencing of him sitting outside the house. But when she pleads, they've both been in jail for a good long time. So, I mean, would she not appreciate that she's in a different position then? I mean, we're not saying that this affects the plea, does it? I think the compulsion defense, in terms of whether she thinks it's aware, is a bit of a separate question. Yes, it seems as though her attorney discussed that. That actually brings me to my second point, so I'll put it in it. In response to Ms. Lee, she does have a valid compulsion defense. The history of abuse was very serious. I do recognize that at some point she's in jail. But this is a man who made serious threats and acted on many of them, including holding a gun to her head at various points. Is there any evidence that this was his idea and not her idea? Yes. How was she compelled to have the idea? There's, I believe it's, I guess it's not his testimony. In his trial, he isn't there. The state, I believe, calls a detective who shares statements that he made. He says, well, I didn't tell her to carry the box so that his hands would be full, but I told her to have him carry something in the house. It's, there's evidence in the record that he is the mastermind. He says in that statement as well that he wants to challenge this guy because they're dating Ms. Lightheart at the same time. He wants to pick a fight. This is his idea. And that, in combination with Ms. Lightheart's affidavit and the information we have before us, I think creates a valid compulsion defense. The cost of losing that defense could be a life sentence. Could be 60 years. Yes. Right? Yes. And that, I think, is certainly a consideration, but the argument that there's no compulsion defense, I think, is incorrect. The second point, I know I'm low on time. The second point, I want to make clear, we on appeal are not arguing that there was an error with the dismissal of the claim about investigation. That claim did advance to the third stage. There was a hearing on that claim about whether or not plea counsel sufficiently investigated. We're not disputing that that was correctly dismissed. That claim was sort of dead as soon as it got to the evidentiary hearing, knowing that the state had nine witness affidavits in its back pocket. And I think that plays into why post-conviction counsel was unreasonable in terms of the sentencing argument, and I addressed that in my briefs, but I did want to make that clear as well. If Your Honors don't have any further questions. You know, I want to thank you both. I asked a lot of questions, and I appreciate the fact that you both responded appropriately. All too often in this court, when we ask questions, we get lawyers dodging or declining to answer, and that's not helpful, so thank you, counsel, and thank you as well. And we'll take a stand on your advisement and stand to recess. Thank you.